UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CRAIG and CARROLL PAYNE, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 2:11CV31 JCH |
| ) | |
| GRINNELL MUTUAL REINSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant(s). ) | |

# **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 20), filed on February 24, 2012. (ECF No. 20). This matter is fully briefed and ready for disposition.

# **BACKGROUND**[1]

## **I.  The Sale**

On March 24, 2007, Christopher and Jennifer Brandow contracted to sell their home located at 2297 County Road 2980 in Clark, Missouri, ("the Property") to Plaintiffs. (Suggestions in Support of Motion for Summary Judgment By Grinnell Mutual Reinsurance Company ("Suggestions in Support"), p. 2, ¶¶ 1-2). The Brandows had owned and resided in the Property for approximately seven years prior to entering into the sale contract with Plaintiffs. (Id., p. 2, ¶ 1). The Brandows conveyed ownership of the Property to Plaintiffs on May 1, 2007, when they executed a General

---

[1] All parties have admitted all material facts cited in support of and opposition to Defendant's Motion for Summary Judgment. See Plaintiffs' Responses to Defendant Grinnell's Statement of Uncontroverted Facts (ECF No. 23) and Reply Suggestions in Support of Motion for Summary Judgment By Grinnell Mutual Reinsurance Company (ECF No. 30). Therefore, all facts contained in the Court's Background section are admitted by both Plaintiffs and Defendant.

Warranty Deed in favor of Plaintiffs.  (Id., p. 3, ¶ 5).  Plaintiffs have resided at the Property since they acquired ownership of it from the Brandows on May 1, 2007.  (Id., p. 3, ¶ 6).

Prior to their sale of the Property to Plaintiffs, the Brandows completed a Seller's Disclosure Statement for Residential Property ("the Disclosure Statement") providing information concerning certain conditions of the Property.  (Id., p. 3, ¶ 7).  Plaintiffs acknowledged receipt of the Disclosure Statement on March 21, 2007.  (Id., p. 3, ¶ 8).

## II.     The Underlying Suit and The Current Suit

On July 14, 2009, Plaintiffs filed suit against the Brandows in the Circuit Court of Boone County, Missouri, Case No. 09BA-CV03723 ("the Underlying Suit").  (Id., p. 3, ¶ 9).  The Underlying Suit was later transferred to the Circuit Court of Randolph County, Missouri, where it was reassigned case number 09RA-CV02027.  (Id., p. 5, ¶ 22).

In their Petition in the Underlying Suit, Plaintiffs pled four counts: fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and violation of the Missouri Merchandising Practices Act.  (Id., p. 3, ¶ 10).  Plaintiffs alleged that the Brandows' representations in the sale contract and the Disclosure Statement were false, as substantial and material structural defects and deficiencies existed on the Property and the heaving of the basement floor slab had resulted in movement of the basement and main-level floors.  (Id., p. 4, ¶ 13).  Plaintiffs also alleged that, after they took possession of the Property, numerous structural problems and other defects became apparent, including out-of-level and sloping floors, poor-fitting interior doors, cracks in foundation walls, cracks in the basement floor, drywall wrinkling, drywall cracks between doors and windows, and buckling and warping of the roof.  (Id., p. 4, ¶ 14).  Finally, Plaintiffs alleged that the Brandows knowingly or negligently misrepresented the condition of the Property, that such representations were false or that the Brandows did not know if the representations were true or

false, and that the Brandows intended that Plaintiffs would rely on such representations by purchasing the Property. (Id., p. 4, ¶ 15).

The defects and deficiencies in the Property, as alleged by Plaintiffs, existed prior to Plaintiffs' purchase of the Property. (Id., p. 5, ¶ 20). These defects and deficiencies were caused by actions or failures by the Brandows from the time construction on the Property began. (Id., p. 5, ¶ 21).

On June 23, 2010, and June 29, 2010, Defendant sent letters to the Brandows agreeing to defend them in the Underlying Suit subject to Defendant's reservation of the right to later deny or disclaim coverage for the claims asserted against the Brandows by Plaintiffs. (Id., p. 8, ¶ 30). Counsel hired by Defendant began serving as legal counsel for the Brandows on, at the latest, June 29, 2010. (Id., p. 8, ¶ 31). On December 8, 2010, Plaintiffs and the Brandows entered into a written agreement whereby Plaintiffs agreed they would not execute any judgment they might obtain in the Underlying Suit against the personal assets of the Brandows and, in exchange, the Brandows agreed to enter into a consent judgment in favor of Plaintiffs in the amount of $100,000. (Id., pp. 5-6, ¶ 23). The consent judgment was entered by the court in the Underlying Suit on January 18, 2011. (Id., p. 6, ¶ 24). Counsel hired by Defendant was still serving as legal counsel for the Brandows at this time. (Id., p. 8, ¶ 31).

On March 9, 2011, Plaintiffs filed this equitable garnishment action against Defendant in the Circuit Court of Randolph County, State of Missouri. On April 28, 2011, Defendant removed the case to this Court on the basis of diversity jurisdiction. In this action, Plaintiffs assert they are entitled to garnish the Policy to recover the amount of their consent judgment against the Brandows based on coverages included in the Policy. (Suggestions in Support, p. 8, ¶ 32).

**III.    The Policy**

Defendant is the reinsurer of the Farmers & Laborers Co-Op Insurance Association, and Defendant incurred the risk on a policy of insurance issued to the Brandows, Policy No. C-3617CO ("the Policy"). (Id., p. 6, ¶ 26). The Policy originally had effective dates of August 17, 2005, to August 17, 2008, but the Policy was cancelled effective 12:01 A.M. on May 2, 2007, at the request of the Brandows. (Id., p. 6, ¶ 27). The Policy had personal liability coverage limits of $300,000 per occurrence. (Id., p. 6, ¶ 29).

In relevant part, the Policy provided as follows:

### PERSONAL LIABILITY POLICY

**DEFINITIONS**

**A.**    In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us", and "our" refer to the Association or Company providing this insurance.

**B.**    In addition, certain words and phrases are defined as follows:

   **5.**    "Insured" means:

      **a.**    You ...

   **8.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

      **b.**    "Property damage".

   **10.**    "Property damage" means physical injury to or destruction of tangible property. "Property damage" does not include loss of use unless the property has been physically injured or destroyed.

**COVERAGES**

**A.**    **Coverage E - Liability To Public**

   Subject to the liability limits and the terms of this policy, we will pay compensatory damages for which an "insured" becomes legally liable as a result of ... "property damage" caused by an "occurrence" to which this coverage applies.

**B.     Coverage E-1 - Damage To Property Of Others**

We will pay all sums arising out of any one "occurrence" for "property damage" to property owned by others if the "property damage" is caused by or the property is in the care of any "insured".

**EXCLUSIONS**

**A.     Under Any Of The Coverages**

**20.** We do not cover "property damage" to property owned by any "insured".

**25.** We do not cover "property damage" to premises you sell, give away, or abandon if the "property damage" arises out of any part of those premises.

**B.     Additional Exclusions Under Coverage E - Liability To Public**

**1.** We do not cover "property damage" to property occupied or used by any "insured" or rented to or in the care of any "insured".

**2.** We do not cover "property damage" to property owned by, rented to, or leased to persons living in the household of an "insured".

**C.     Additional Exclusions Under Coverage E-1 - Damage To Property Of Others**

We do not cover "property damage" to property owned or rented by:

**1.** Any "insured";

**CONDITIONS**

**B.     Your Duties After A Loss**

In case of an accident that may give rise to a claim, or if a person makes a claim against an "insured" as a result of an "occurrence", you or another "insured" must perform the following duties:

**3.** Cooperate with us and assist us in any matter relating to a claim or suit.

The "insured" will not, except at the "insured's" own cost, voluntarily make any payment, assume any obligations, or incur expenses.

- 5 -

> FAILURE TO COMPLY WITH THESE DUTIES MAY RESULT IN LOSS OF COVERAGE UNDER THIS POLICY.

## STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

Defendant argues there is no coverage under the Policy for the consent judgment obtained by Plaintiffs for the following reasons: (1) the Underlying Lawsuit did not seek damages for "property damage"; (2) the damages alleged in the Underlying Lawsuit were not caused by an "occurrence"; (3) the damages alleged in the Underlying Lawsuit fall under the exclusion for "'property damage' to property owned by any 'insured'"; (4) the damages alleged in the Underlying Lawsuit fall under the exclusion for "'property damage' to premises you sell, give away, or abandon if the 'property damage' arises out of any part of those premises"; and (5) the Brandows forfeited any available coverage by breaching policy conditions.  Since the Court finds Defendant's first argument is dispositive of Defendant's Motion for Summary Judgment, the Court declines to address Defendant's remaining arguments.

This Court will look to Missouri law for the rules of decision, because subject matter jurisdiction over this case is based on diversity of citizenship. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); General Electric Capital Corp. v. Union Planters Bank, N.A., 409 F.3d 1049, 1053 (8th Cir. 2005) ("In diversity cases, we apply the substantive law of the state in which the district court sits."). Missouri courts would apply the substantive law of Missouri in an action involving real estate insurance when the real estate is located in Missouri. Egnatic v. Nguyen, 113 S.W.3d 659, 665 (Mo. Ct. App. 2003) (principal location of insured risk is most important factor when determining choice of law).

Under Missouri law, the interpretation of an insurance policy is a question of law. McCormack Baron Mgmt. Services, Inc. v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 171 (Mo. banc 1999).  Clear and unambiguous language in an insurance policy should be given its plain meaning. St. Paul Fire & Marine Ins. Co. v. Lippincott, 287 F.3d 703, 705 (8th Cir. 2002) (citing Killian v. Tharp, 919 S.W.2d 19, 21 (Mo. Ct. App. 1996)).

In Lippincott, 287 F.3d at 705-06, the Eighth Circuit Court of Appeals held that, under Missouri law, the negligent misrepresentation of sellers concerning the condition of their house did not constitute "property damage" under the sellers' insurance policies. The underlying suit against the sellers in Lippincott alleged the sellers intentionally and negligently concealed structural damage to the home by patching a crack with spackling, covering a crack with carpet, and filling a room with boxes to make it difficult to discover cracks. Id. at 704-05. Additionally, the sellers had completed a disclosure statement falsely representing they were not "aware of any past or present cracks or flaws in the walls or foundations." Id. at 705. The sellers' insurance company defended the sellers in the underlying lawsuit under a reservation of rights and filed a declaratory judgment action against the sellers after judgment in the underlying lawsuit was entered against the sellers on the claim for negligent misrepresentation. Id.

The primary insurance policy and umbrella policy at issue in Lippincott defined "property damage" as, respectively, "damage to someone else's property or its loss or destruction and the loss of its use" and damage to "tangible property or its loss or destruction" and "the loss of use." Id. The Eighth Circuit found that the plain meaning of "property damage" under the policies "is a tangible, that is, a physical or material, loss or destruction of property." Id. The court noted that the sellers' negligent misrepresentations did not cause any physical damage to the house, and that the structural flaws in the house "predate[d] the occurrence of concealments and misrepresentations by which the [sellers] incurred liability." Id. at 706. Since the judgment entered against the sellers "covered the intangible losses incurred when the [buyers] relied to their economic detriment upon the [sellers'] misrepresentations," such losses were pecuniary damages and were not property damages within the meaning of the insurance policies at issue. Id.

In Hartford Ins. Co. of the Midwest v. Wyllie, 396 F.Supp.2d 1033 (E.D.Mo. 2005), the court applied the Eighth Circuit's decision in Lippincott to a definition of "property damage" that is nearly identical to the definition at issue here and held that the underlying lawsuit did not allege "property damage." The underlying lawsuit in Wyllie alleged the home seller represented in her seller's disclosure statement that there were no problems with her condominium and that she failed to disclose problems and defects with the roof, heating and cooling systems, and elevators. Id. at 1036. The seller's insurance policy defined "property damage" as "physical injury to, destruction of, or loss of use of tangible property." Id. at 1035. The court noted that "[a]ny defects in the condominium were in existence at the time [the buyers] purchased the property," and that no subsequent damage had diminished the value of the condominium. Id. at 1039. Thus, "no loss in value flowed from [the seller's] conduct." Id.

A number of other courts have recognized that claims alleging fraudulent or negligent misrepresentation in connection with the sale of a home are not claims for "property damage" under homeowners insurance policies. See, e.g., Safeco Ins. Co. of Am. v. Andrews, 915 F.2d 500 (9th Cir. 1990) (holding that damages from negligent failure to inform of unstable earth, faulty wiring, defective plumbing, and water leakage were economic damages and therefore not covered property damage); Boggs v. Great N. Ins. Co., 659 F.Supp.2d 1199 (N.D. Okla. 2009) (holding that damages from fraudulently or negligently misrepresenting that all six fireplaces were in working order were economic damages and therefore not covered property damage); Aluise v. Nationwide Mut. Fire Ins. Co., 625 S.E.2d 260 (W.Va. 2005) (holding that damages for fraudulently or negligently misrepresenting the absence of structural damage and water seepage were economic and therefore not covered property damage); see also Lenning v. Commercial Union Ins. Co., 260 F.3d 574 (6th Cir. 2001) (applying Kentucky law); Shelter Mut. Ins. Co. v. Brown, 345 F.Supp.2d 645 (S.D. Miss.

2004); Allstate Ins. Co. v. Morgan, 806 F.Supp. 1460 (N.D.Cal. 1992); Huffhines v. State Farm Lloyds, 167 S.W.3d 493 (Tex. App. 2005); Lawyer v. Kountz, 716 So.2d 493 (La. Ct. App. 1998); Devin v. United Servs. Auto. Ass'n, 6 Cal.App.4th 1149, 8 Cal.Rptr.2d 263 (Cal. Ct. App. 1992); Qualman v. Bruckmoser, 471 N.W.2d 282 (Wis. Ct. App. 1991); Dixon v. Nat'l Am. Ins. Co., 411 N.W.2d 32 (Minn. Ct. App. 1987).

Here, the Underlying Lawsuit did not seek damages for "property damage" as that phrase is defined in the Policy, and there is no coverage under the Policy for the consent judgment entered against the Brandows.  Plaintiffs admit that the defect or deficiencies in the Property, as alleged in the Underlying Suit, existed prior to their purchase of the Property.  The Policy defines "property damage" as "physical injury to or destruction of tangible property."  As in Lippincott and Wyllie, the negligent or fraudulent misrepresentations as to the condition of the property sold did not result in subsequent physical injury to or destruction of the property.  Thus, the value of the Property was not diminished by the Brandows' conduct.  Since Plaintiffs' damages were incurred when they relied to their economic detriment on the Brandows' misrepresentations, such damages do not constitute "property damage" under the Policy.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**, and Plaintiffs' claims are dismissed with prejudice.  An appropriate Judgment will accompany this Memorandum and Order.

Dated this   26th   day of April, 2012.

- 11 -

/s/Jean C. Hamilton  
UNITED STATES DISTRICT JUDGE